IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

| | |
|---|---|
| **PERRY B. GAINS,**<br><br>**Plaintiff**,<br><br>v.<br><br>**ANTERO RESOURCES CORPORATION,**<br><br>**Defendant.** | **CIVIL ACTION NO.: 1:24-CV-99**<br>**(JUDGE KLEEH)** |

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL DISCOVERY [ECF NO. 26]

Presently pending before the Court is a motion to compel discovery [ECF No. 26] filed by Plaintiff on March 6, 2025. The Court also is in receipt of Defendant's response [ECF No. 29] filed on March 20, 2025, and Plaintiff's reply [ECF No. 31] filed on March 25, 2025. By Referral Order [ECF No. 34] entered on May 5, 2025, the Hon. Thomas S. Kleeh, Chief United States District Judge, referred the motion [ECF No. 26] to the undersigned United States Magistrate Judge for hearing and disposition. On May 30, 2025, the undersigned convened a Motion Hearing, by videoconference, at which appeared counsel for the respective parties.

After a thorough review of the motion, response, and reply, and of the record herein and pertinent legal authority, and after having received the arguments of counsel at the Motion Hearing, the Court hereby **GRANTS** Plaintiff's motion as more fully set forth herein.

### I. BACKGROUND AND FACTUAL ALLEGATIONS

This matter involves a dispute over the production and monetization of subsurface minerals and whether Defendant did so impermissibly and to Plaintiff's detriment. Often, such disputes in this region involving the right, title, and interest in and to subsurface minerals are tied to the

1

severance or leasing of mineral interests dating back decades, and this matter is no different. To this end, Plaintiff explains that, in the early 1900s, it was a common practice in Doddridge County, West Virginia to split the oil estate from the gas estate on a given piece of property. Different companies were involved in operating for oil or gas, respectively, but not necessarily for both. Plaintiff states that such a split occurred as to the property at issue here.

Plaintiff describes himself as an oil producer/operator based in Harrison County, in the Northern District of West Virginia. In the instant matter, there appears to be no disagreement that Plaintiff holds the leasehold for <u>oil</u> production as to a tract or parcel of real estate, covering approximately 85 acres, situate in the West Union District of Doddridge County, in the Northern District of West Virginia. This leasehold is pursuant to a lease, identified as the J.S. Netzer lease, and is designated in the records of the Assessor of Doddridge County, West Virginia as Tax Map 14, Parcels 19-19.5 and Tax Map 15, Parcels 14-16 in West Union District. In his motion, Plaintiff terms this leasehold interest "the Estate" and the Court likewise refers to the leasehold in that fashion, to designate the <u>oil</u> mineral estate. Plaintiff states that he is the successor-in-interest as to the Estate (which, it seems, Defendant does not dispute), that being the leaseholder/working interest owner for the <u>oil and the oil only</u> and the sole party with the right to produce and market the oil. And it appears that Defendant is the successor-in-interest as producer/operator for the <u>natural gas</u> for the same property (which, it seems, Plaintiff does not dispute).

Essentially, Plaintiff alleges that Defendant has been developing and selling oil from the Estate, although Defendant is not entitled to do so. Apparently, Defendant has pooled or unitized the natural gas underlying the property at issue[1], and has been producing and marketing the same

---

[1] Defendant's operating units involved here appear to be named the Aspen Unit and the Redwood Unit. Notably, this arises from the regional industry boom in production from the Marcellus shale formation. Plaintiff states that his leasehold covers oil in the Marcellas shale; thus, Defendant's frequent operation in that formation (albeit often for natural gas and hydrocarbons) potentially implicates Plaintiff's interests.

in conjunction with its other natural gas holdings in the area. Plaintiff alleges that Defendant also has been selling the Estate's oil and related hydrocarbons, along with natural gas – and that Defendant's extraction and selling of that oil is impermissible. Plaintiff alleges that Defendant has been doing so since in or around February of 2023, and continues to do so.

At the Motion Hearing of May 30, 2025, counsel for the parties agreed that this case is unusual, insofar as producers of the subsurface minerals in question typically attempt to lease minerals on "both sides of the chain of title" – meaning that there usually is a single leaseholder of all the minerals in question. Here, however, there is a split leasehold. In any event, as a result, Plaintiff has lodged five causes of action: Count One for Conversion, Count Two for Quiet Title/Declaratory Judgment, Count Three for Unjust Enrichment, Count Four for Trespass, and Count Five for Waste.

## II. SUMMARY OF DISCOVERY DISPUTE

The dispute here concerns a single discovery request from Plaintiff's Requests for Production propounded on September 23, 2024. The discovery request at issue is Request for Production No. 20. The Request and Defendant's response to it are below:

> REQUEST NO. 20: Produce all documents and communications which relate to the payment/distribution of royalties, overriding or otherwise, from the sale/marketing of oil, gas and/or hydrocarbons produced on or from the Estate.
>
> RESPONSE: Antero objects to Request No. 20 as overbroad and not proportionate to the needs of the case insofar as it requests information regarding payment of royalties and overriding royalties to any owners in Antero's Aspen and Redwood Unit Wells. Plaintiff seeks information regarding all of Antero's royalty owners within the Aspen and Redwood Unit wells, which is in no way relevant or responsive to Plaintiff's claims in this matter that are limited to his allegations that he owns the "oil" leasehold estate. Subject to and without waiving the foregoing objections, Antero states that it is the lessee of the gas estate and is not producing oil as defined by West Virginia Code § 22-6-1(k). Notwithstanding the foregoing. Antero refers to its well-level revenue data for condensate produced from the Aspen and Redwood Unit Wells (Bates-stamped ARPG-0002817). See **Exhibit 1**, Discovery Responses, RFP No. 20.

3

Basically, Plaintiff is seeking documentation of Defendant's payments of royalties from its production of minerals from the property in which the Estate lies, regardless of what minerals have been produced. Plaintiff wants to examine this documentation for any notations about "oil" product. Plaintiff does not seek this information for production on properties other than that in which the Estate lies. Plaintiff points to an example royalty statement document generated by Defendant to demonstrate how interests/royalties seemingly related to oil are notated there. Plaintiff also notes that such documentation may demonstrate deductions of expenses related specifically to oil production. As such, the argument goes, such notations related to "oil" would tend to support Plaintiff's claims that Defendant has been producing oil unlawfully.

Put another way, Plaintiff is trying to show that Antero took and sold the oil which he otherwise has leased. He alleges that Antero basically stepped into his shoes, and marketed the oil when it was Plaintiff who had the right to do so. To show that, he argues, he should be able to examine records of how Antero treated other holders of mineral interests in the same property. At the Motion Hearing of May 30, 2025, Plaintiff's counsel explained that there is one stream of product that comes from the Marcellus well in question. Defendant makes monthly reports to state regulators about three constituents in that product: gas, oil, and water. The forms on which Defendant makes those reports contain a section specifically for "oil." What is more, Plaintiff's counsel explained, discovery obtained thus far shows that, when that product is taken from the wellhead, it is transported to a mechanism called a "separator," which separates the product into three different lines for gas, oil, and water. The "oil" then is placed into a tank on location, and ultimately taken by truck to market.

Plaintiff is agreeable to protect payee information, by, for example, making the documentation subject to a protective order, or to receive documentation that reflects only payee numbers and not personal identifiers.

Defendant resists providing the information for several reasons. First, Defendant flatly denies that it is producing "oil" from the Estate; instead, Defendant insists, it is producing gas, natural gas liquids, and "condensate." At the Motion Hearing of May 30, 2025, Defendant's counsel explained that the "oil" about which Plaintiff complains actually is condensate. Counsel argued that the reporting of "oil" to state regulators on the required form is a result of the form not containing a section for condensate. And counsel stressed that the labeling of the substance as "oil" at the production site is not an indication that the substance involved is "oil" under the law or under the leasing arrangements at issue. In other words, counsel argued, the nomenclature for on-site equipment is not dispositive of the legal questions here. What is more, Defendant's counsel explained that Defendant's internal accounting system has limitations, such that the designation of "oil" within entries in that system is not dispositive here. Plus, in its response brief, Defendant explains its position and processes:

> Antero's wells are drilled into the Marcellus Shale gas formation and produce a gaseous hydrocarbon stream through the wellbore. Under both the industry custom and practice and West Virginia law, Antero is not producing "oil" from an "oil estate." West Virginia Code Section 22-6-1(k) defines "Oil" as "natural crude oil or petroleum and other hydrocarbons, regardless of gravity, ***which are produced at the well in liquid form by ordinary production methods and which are not the result of condensation of gas after it leaves the underground reservoirs."*** (emphasis added). Whereas "Gas" is defined in Section 22-6-1(j) to mean "all-natural gas and all other fluid hydrocarbons not defined as oil in this section." Antero produces a hydrocarbon gas stream through the wellbore—Antero does not produce any liquid through the wellbore.

[ECF No. 29, at 3]. Thus, per Defendant, Plaintiff is seeking payment information for products which are not at issue here.

Second, Defendant represents that it tried to resolve the dispute by providing revenue data for condensate it has produced (but not for natural gas or natural gas liquids). Defendant explains that this condensate is the result of gas condensing when it is extracted from the underground formation. Defendant believes that providing revenue data for condensate should satisfy Plaintiff.

Third and finally, Defendant differentiates between a working interest owner such as Plaintiff, and a royalty interest owner. As a working interest owner, Plaintiff would receive revenues from the actual production and marketing of oil, whereas royalty owners would be paid at whatever rate or percentage they are due once that product is sold. Stated differently, the argument goes, payments to royalty owners are of a different sort, and unrelated to the types of payments which Plaintiff says have been impacted for him. On this point, Defendant represents that while oil working interests may have been severed from the gas estate, nothing shows that gas royalty interests were severed from gas estate. As such, the royalty owners of both the oil estate and the gas estate under the Netzer lease are the same. Thus, the argument is that it is irrelevant if Defendant treated Plaintiff differently from a royalty owner because he is different from a royalty owner.

### III. ANALYSIS

The overarching provision which governs the scope of discovery under the Federal Rules of Civil Procedure is that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit.

Fed. R. Civ. P. 26(b)(1). And information need not be admissible to be discoverable. Id. In this context, as the Fourth Circuit has instructed:

> All civil discovery, whether sought from parties or nonparties, is limited in scope by Rule 26(b)(1) in two fundamental ways. First, the matter sought must be "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance is not, on its own, a high bar. There may be a mountain of documents and emails that are relevant in some way to the parties' dispute, even though much of it is uninteresting or cumulative. Rule 26 therefore imposes another requirement: discovery must also be "proportional to the needs of the case." Id. Proportionality requires courts to consider, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. This relieves parties from the burden of taking unreasonable steps to ferret out every relevant document.

Virginia Dep't of Corr. v. Jordan, 921 F.3d 180, 188–89 (4th Cir. 2019). In any event, "A district court has wide latitude in controlling discovery and ... its rulings will not be overturned absent a showing of clear abuse of discretion." Rowland v. Am. Gen. Fin., Inc., 340 F.3d 187, 195 (4th Cir. 2003) (citations and quotations omitted).

While the factual scenario giving rise to this dispute may be uncommon, the analysis for purposes of discovery is fairly straightforward. Plaintiff has the oil leasehold; Defendant has the natural gas leasehold. Plaintiff has uncovered several indications that Defendant is producing "oil" from the property in question. A conclusion about which party is correct about "oil" production will be determined at a later stage of the litigation. At this stage, though, it is not for the undersigned to determine who is correct. Rather, the inquiry now is whether Plaintiff should be permitted to obtain the documentation he seeks. The undersigned concludes that he should be so permitted.

The manner in which Defendant designates, produces, markets, pays royalties upon, and otherwise handles the product at issue goes to the core of Plaintiff's claims. For the undersigned to determine otherwise would, essentially, be a conclusion that Defendant is correct that it is not producing "oil" – which of course is not appropriate in this context of a discovery dispute, at this stage of the litigation. Defendant can continue to argue at the appropriate, later stages of litigation that it is not producing Plaintiff's oil. But the information Plaintiff seeks has direct bearing on

7

those later stages, such as the dispositive motion stage and even trial, if the matter proceeds to trial. Conceivably, in reviewing a summary judgment motion, the information sought could aid the Court in determining whether, as a matter of law, "oil" or some other product is at issue. Moreover, conceivably, the information sought could aid a trier of fact who is examining the same question.

The novelty of this case also militates in favor of granting the motion. At the Motion Hearing, counsel for the parties acknowledged that the factual scenario here arises seldomly, insofar as mineral leaseholders typically aim to "lease on both sides of the chain." As such, there appears to be little precedent for a dispute between parties as those parties are positioned herein. Therefore, more information, not less, about the product at the core of the dispute would aid both the parties and the Court in addressing the novel questions of law and fact presented.

Relatedly, Defendant's argument about how Plaintiff's leasehold interest in the oil is different from that of the royalty owners, such that he should not obtain information about royalty payments, is unavailing. The core question here is not whether Plaintiff's interest in oil is the same as that of royalty payees. Rather, the core question is how Defendant produced, marketed, and handled proceeds from the product which Plaintiff claims is rightfully his. That product, whether it is "oil" or not, is the same regardless of whether it is reflected in records of a leaseholder or records of a royalty payee. Defendant's designations or notations about the product at issue, in the documentation sought, would bear directly on the question about whether Plaintiff is correct in his allegations. And in producing such discovery, Defendant would not be precluded from continuing to provide its explanations about how the product at issue is not "oil" in which Plaintiff has an interest.

Finally, it is noteworthy that Plaintiff is not seeking a great volume of discovery here. The discovery request is proportional to the claims at issue. The request for production pertains to a

single piece of real estate, where Plaintiff's oil leasehold lies. There seems to be no dispute that the royalty payees are easily ascertainable within (and that the information sought about them could be located and generated from) Defendant's internal recordkeeping systems. There is also a temporal limitation to Plaintiff's request, in that he seeks documentation for production dating back only to early 2023, and not for many years or decades prior. In the realm of discovery disputes arising from mineral leasing/royalty claims, well known to this Court, the one here involves a relatively discrete and manageable collection of documentation. Moreover, Plaintiff indicates that he is not necessarily seeking royalty payees' personal identifiers such as names and addresses, and would be satisfied with having only payee numbers.

At bottom, then, the undersigned concludes that the information Plaintiff seeks is both relevant to the claims herein, and proportional to the needs of the case, per the applicable rules of discovery and interpretive caselaw.

### III. CONCLUSION

Accordingly, for the reasons set forth herein, it is **ORDERED** that Plaintiff's motion to compel [ECF No. 26] is hereby **GRANTED**. It is further **ORDERED** that Defendant shall provide to Plaintiffs, forthwith, the materials sought via the request for production which is at issue in Plaintiff's motion. However, it is further **ORDERED** that Defendant may, if it so chooses, provide the information for its payees by indicating only payee numbers without providing payees' personal identifiers.

It is all so **ORDERED**.

The Clerk of the Court is **DIRECTED** to provide a copy of this Order to any parties who appear *pro se* and all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Case 1:24-cv-00099-TSK-MJA   Document 42   Filed 06/03/25   Page 10 of 10  PageID #: 964

**DATED: June 3, 2025.**

_____
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE

10